UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCIA M. HALPIN,

       Plaintiff,

v.

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

17-CV-002

Decision & Order

On January 2, 2017, the plaintiff, Marcia M. Halpin, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On July 24, 2017, Halpin moved for judgment on the pleadings, Docket Item 9, and on October 26, 2017, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13.

For the reasons stated below, this Court grants Halpin's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On February 27, 2013, Halpin applied for Supplemental Security Income benefits ("SSI") as a disabled widow. Docket Item 7 at 193. She claimed that she had been disabled since October 27, 2002, due to abdominal injuries, nerve and muscular

damage, kidney disease, post-traumatic stress disorder, depression, anxiety, memory problems, fatigue, narcolepsy, carpal tunnel syndrome, and reflux. *Id* at 72, 205. Many of her conditions stem from a gunshot wound to her abdomen. Docket Item 9-1 at 5.

On July 10, 2013, Halpin received notice that her application was denied because she was not disabled under the Act. *Id.* She requested a hearing before an administrative law judge ("ALJ"), Docket Item 9 at 69, which was held on February 10, 2015, *id.* The ALJ then issued a decision on April 17, 2015, confirming the finding that Halpin was not disabled. *Id.* Halpin appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5. On January 2, 2017, Halpin filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Halpin's objection. Halpin was examined by several different providers, but only two, Armit P. Singh, M.D. and Donna Miller, D.O., are most significant to her claim here.

### A. Armit P. Singh, M.D.

On seven separate occasions between June 11, 2012, and January 15, 2015, Dr. Singh, a pain management specialist, Docket Item 9-1 at 6, treated Halpin for dull and constant pain that would increase with activity. Docket Item 7 at 595-600, 633-40. He also provided an electrodiagnostic consultation on November 13, 2014. *Id.* at 642. On January 15, 2015, after three years of treating Halpin, Dr. Singh opined that "[d]ue to her chronic pain issues, physical limitations and need for treatment with narcotic analgesics she is not a candidate for full time employment." Docket Item 7 at 634.

### B. Donna Miller, D.O.

Dr. Miller performed a consultative examination of the claimant on June 11, 2013. *Id.* at 421. Dr. Miller observed that Halpin's "[c]ervical spine flexion [was] 30 degrees, extension 30 degrees, rotation right 20 degrees, left 30 degrees, and lateral flexion 30 degrees bilaterally." *Id.* at 424. She further found "[l]umbar spine flexion 70 degrees, extension 5 degrees, lateral flexion 20 degrees bilaterally, and rotation 20 degrees bilaterally. Hip flexion-extension 90 degrees bilaterally, interior rotation 30 degrees bilaterally, exterior rotation 40 degrees bilaterally, backward extension 20 degrees bilaterally, abduction 30 degrees bilaterally, and adduction 20 degrees bilaterally." *Id.* Dr. Miller diagnosed Halpin with chronic low back pain, a history of a gunshot wound with multiple surgeries, gastroesophageal reflux disease, narcolepsy, and bilateral carpal tunnel syndrome. *Id.* Dr. Miller further opined that Halpin "has mild limitation for heavy lifting, bending, and carrying" and also "mild limitation for repetitive motion of her hands." *Id.*

## III. THE ALJ'S DECISION

In denying Halpin's application, the ALJ evaluated Halpin's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is

3

not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, the claimant is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one the ALJ determined that Halpin had not engaged in substantial gainful activity since her disability onset date, October 27, 2002. Docket Item 7 at 71. At step two, the ALJ found that Halpin suffered from severe impairments, including a gunshot wound, history of colostomy and reversal, history of methicillin-resistant staphylococcus aureus infection, scoliosis, and carpal tunnel syndrome. *Id.* at 72. At step three, the ALJ found that Halpin's severe impairments did not match or medically equal an impairment listed in the regulations. *Id.* at 75. The ALJ then found Halpin had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except she cannot bend more than 45 degrees and she can bend to 45 degrees no more than occasionally. The claimant cannot twist the spine more than occasionally. She must be able to change positions briefly, for one to two minutes, at least every one-half hour. She can have no more than frequent use of the hands and no more than occasional rotation of the wrists. The claimant cannot climb ropes, ladders, or scaffolds. She cannot balance, stoop, crouch, or climb stairs or ramps more than occasionally. The claimant cannot tolerate any exposure to heights or dangerous, moving machinery.

*Id.* at 75-76. In reaching the RFC determination, the ALJ gave significant weight to Dr. Miller's opinion. *Id.* at 84. The ALJ gave little weight to the opinions of several other physicians and did not specify how much or how little weight he assigned to the opinion of Dr. Singh. *Id.* Finally, at step five, the ALJ found that Halpin could perform jobs that exist in the national economy. *Id.* at 85.

Halpin takes issue with the ALJ's RFC determination. She contends that the ALJ erred in failing to evaluate the opinion of the treating pain specialist, Dr. Singh, or develop the record by obtaining an RFC opinion from a treating physician. Docket Item 9 at 1. Halpin also argues that the ALJ failed to make a proper credibility assessment. *Id.* And she contends that new and material evidence warrants remand. *Id.*

5

## LEGAL STANDARDS

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. SUBSTANTIAL EVIDENCE AND TREATING-SOURCE OPINION

Under policy in effect at the time of Halpin's claim, an ALJ must evaluate every medical opinion received when determining a claimant's RFC. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). Although the ALJ may consider the opinions of "other sources"—e.g., nurse practitioners—there is no obligation to assign weight or give

6

deference to these sources. *Id.* Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

An ALJ should generally give greater weight to the medical opinions of treating physicians because those medical professionals are most able to provide a detailed, longitudinal picture of medical impairments. *See* 40 C.F.R. § 494.1527(c)(2). In evaluating whether a treating physician's opinion will be assigned controlling weight, the ALJ must first consider whether the opinion is well supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. *Id.* If the ALJ decides that the opinion is not entitled to controlling weight, he then should consider several factors that determine the weight of the medical opinion. *Id.*

Here, the ALJ did not evaluate the weight given to the opinion of Dr. Singh, a long-time treating physician, at all. What is more, his determination failed even to mention Dr. Singh's treatment of Halpin after July 1, 2013—omitting treatment records from October 3, 2014, and January 9, 2015.[1] Docket Item 7 at 81. The ALJ's "failure to provide 'good reasons' for not crediting" Dr. Singh's opinion—or, indeed, give any

---

[1] The ALJ did mention the electromyogram and nerve conduction study ordered by Dr. Singh and performed on November 13, 2014, but he did not discuss its relationship to Dr. Singh's treatment or conclusions or assign it any weight.

7

reasons at all—"itself warrants remand." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). And in light of that omission, the ALJ fell short of his duty to "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Pilarksi v. Commissioner of Social Sec.*, 2014 WL 4923994, at *2 (W.D.N.Y. Sep. 30, 2014) (internal quotations omitted).

The Commissioner argues that Dr. Singh's conclusion that Halpin was "not a candidate for full time employment" was not a medical opinion. That argument is unpersuasive. The Commissioner relies on 40 C.F.R. § 404.1527(d), which provides that medical opinions that the claimant is disabled or on other issues reserved to the commissioner are not medical opinions. Docket Item 13-1 at 17. But Dr. Singh's opinion that "[d[ue to her chronic pain issues, physical limitations and need for treatment with narcotic analgesics [Halpin] is not a candidate for full time employment" is not squarely an opinion on an issue reserved to the Commissioner. Docket Item 7 at 634. Dr. Singh's statement is more naturally construed as a description of Halpin's limitations and his medical recommendations rather than a conclusion that Halpin was disabled within the meaning of the Act and therefore entitled to benefits. *Id*.

Even if the Commissioner were correct that this statement is a legal conclusion and not a medical opinion, the ALJ still should have given it some consideration. *See* SSR 96-5p. The ALJ is required to provide good reasons for rejecting "even laconic" treating-source opinions. *Schramm v. Colvin*, 2014 WL 4627222, at *3 (W.D.N.Y. Sep. 15, 2014). Indeed, the Commissioner's brief admits that the failure to do so was contrary to the Commissioner's policy. Docket Item 13-1 at 18. So whether or not Dr. Singh's January 2015 statement was a medical opinion, the ALJ nonetheless erred by

8

failing to consider it, or to develop it by asking for further interpretation or information from Dr. Singh, or to discuss the weight assigned to Dr. Singh's treating-source opinions at all. *See Snell v. Apfel*, 177 F.3d 128, 134 ("Reserving the ultimate issue of disability to the Commissioner . . . does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited.").

Dr. Singh treated Halpin over the course of several years for the very problems at issue in this case. Therefore, as the treating physician rule recognizes, Dr. Singh is well positioned to provide a comprehensive longitudinal opinion on the claimant's RFC. *See* 40 C.F.R. § 494.1527. As such, Dr. Singh's opinion is entitled to at least some weight. So the ALJ's failure to address all Dr. Singh's treating opinions—or assign weight to any of them—was not harmless error, and the ALJ's determination is not supported by substantial evidence.[2] On remand, the ALJ should consider Dr. Singh's treating opinions in determining Halpin's RFC and state the reasons why that opinion is given the weight the ALJ gives it.[3]

---

[2] Halpin argues that the ALJ failed to develop an RFC opinion from a treating physician and improperly substituted lay judgment for medical judgment. The Court need not reach these issues because remand is required for another reason.

[3] Halpin argues that the ALJ erred in failing to do a full and proper credibility assessment of the claimant. Docket Item 9-1 at 28. Halpin also argues that the Appeals Council failed to consider new material evidence. *Id.* at 18. Because this Court already has found that remand is required, there is no need to address these issues.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Halpin's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: October 10, 2018
Buffalo, New York

     *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE